UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD RAY PIERRE,<br><br>Defendant. | No. 1:19-cr-00082-DAD-BAM-3<br><br>ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 91) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Donald Ray Pierre. (Doc. No. 91.) That motion is based in part on the purported risks allegedly posed to defendant Pierre by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On July 21, 2020, following his pleas of guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances (oxycodone and hydrocodone) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and to one count of identity theft in violation of 18 U.S.C. § 1028(a)(7), the court sentenced defendant Pierre to a term of 112 months in the custody of the U.S. Bureau of Prisons ("BOP") on each count with those sentences to run

1

concurrently, followed by concurrent terms of supervised release of 36 months on both counts. (Doc. Nos. 80, 82.) The court also imposed the mandatory $200 special assessment. (Doc. No. 82 at 6.)

Defendant is currently incarcerated at Fresno County Jail as he awaits his transfer to a designated BOP facility. (Doc. No. 95 at 8.) As of the date of this order, due in part to his pre-trial detention, defendant Pierre has served approximately only 18 months of his 112-month custodial sentence. (*See id.*)

On approximately August 10, 2020, defendant Pierre tested positive for COVID-19, and according to the government and defendant's medical records, he experienced an asymptomatic infection at that time. (Doc. Nos. 95 at 9; 91-1 at 40–42, 44–49, 51.)

On August 12, 2020, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 83.) The court then referred defendant's motion to the Federal Defender's Office ("FDO"). (Doc. No. 84.) On August 14, 2020, defendant filed a supplement to his *pro se* motion. (Doc. No. 85.)[1] On September 30, 2020, appointed counsel filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Pierre. (Doc. No. 91.) The government filed its opposition to the pending motion on October 14, 2020. (Doc. No. 95.) Although granted leave to do so by October 21, 2020 (*see* Doc. No. 92), counsel on behalf of defendant Pierre did not file a reply in support of the pending motion.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited

---

[1] On August 20, 2020, appointed counsel filed a supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Pierre. (Doc. No. 86.) The government filed its opposition to that motion on September 18, 2020. (Doc. No. 87.) On September 29, 2020, the court granted defendant's request to withdraw his *pro se* motion filed in August. (Doc. Nos. 89, 90.)

circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial

3


The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL

/////

---

intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

4

2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

In his pending motion, defendant failed to address whether he submitted any administrative compassionate release request to the BOP prior to filing the pending motion in this court. (*See* Doc. No. 91.) Defendant Pierre is still currently incarcerated at Fresno County Jail, a

non-Bureau of Prisons facility, while he awaits transfer to a designated BOP facility.  (Doc. No. 95 at 8.)  The government argues that administrative exhaustion is mandatory and that defendant was required to "make some effort to request compassionate release through Bureau of Prisons channels."  (Doc. No. 95 at 10–11, 15.)  According to the government, no evidence exists showing that defendant submitted a request for compassionate release to any BOP staff.  (Doc. No. 95 at 16.)

Defendant has not requested that he be excused from complying with § 3582(c)(1)(A)'s administrative exhaustion requirement.  Nonetheless, the court declines to decide in this case whether a failure to satisfy that requirement can be excused and, if so, under what circumstances.  *See, e.g.*, *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858 (N.D. Cal. May 8, 2020) (finding that administrative exhaustion under § 3582(c)(1)(A) can be excused); *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020) (holding that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances).  Rather, for the reasons explained below, the court finds that defendant Pierre has, in any event, not established that extraordinary and compelling reasons warrant his compassionate release.  The court also concludes that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).  Accordingly, the court declines to address whether defendant has satisfied the administrative exhaustion requirement under § 3582(c)(1)(A) or may be relieved of the obligation to do so in light of his lengthy pre-designation incarceration at the Fresno County Jail.  Below, the court instead turns to the merits of the pending motion.

**B.      Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts agreed that it may be relied upon by defendants bringing their own motions for reductions in their

sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)  suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to

7

reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

Defendant Pierre argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist because: (1) he suffers from "a host of health conditions" that, according to the Centers for Disease Control and Prevention ("CDC"), place him "at a high risk of severe illness and/or complications from COVID-19," (2) he is incarcerated at Fresno County Jail, and (3) he tested positive for COVID-19 and was not informed he tested positive. (Doc. No. 91 at 2–3.) In particular, defendant asserts that he suffers from high blood pressure, asthma, and chronic lung disorder, all of which he contends place him at an increased risk of suffering severe illness from COVID-19 based on CDC guidance identifying those medical conditions as risk factors. (*Id.*) Moreover, defendant argues that, even though he has already contracted COVID-19, having tested positive for the virus on or about August 10, 2020 and experienced an asymptomatic infection, he nevertheless still faces a risk of serious illness if he were to be re-infected with COVID-19. (*Id.* at 3.)

Defendant Pierre also asserts in conclusory fashion that in light of his medical conditions and his incarceration, the "conditions of confinement" place him "at risk of contracting the coronavirus." (*Id.* at 2.) In particular, defendant asserts that the "the crowded conditions and lack of appropriate ventilation" and his medical conditions place him "at high risk of serious illness or death now that he has contracted the virus." (*Id.*) Further, defendant emphasizes that he has previously tested positive for COVID-19 during his incarceration at the Fresno County Jail but "was not made aware he tested positive for the virus." (*Id.* at 3.) Accordingly, defendant argues

---

[5] This provision, however, does not apply here. As noted above, defendant Pierre has now served only 18 months of his 112-month custodial sentence. Moreover, defendant is only 51 years old, and thus his age and age-related factors do not play a role in consideration of his pending motion.

8

that his "health risks combined with the future risk of further spread of COVID-19 within" the Fresno County Jail constitute extraordinary and compelling reasons that warrant his compassionate release. (*Id.*)

In its opposition, the government argues that defendant has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief, and defendant does not suffer from CDC-recognized high-risk factors. (Doc. No. 95 at 16–17.) In addition, the government contends that it is not likely that defendant Pierre "will suffer any severe complications" from contracting COVID-19 because he already "tested positive for COVID, and was presumably asymptomatic" because his medical records do not reflect that he "endure[d] the common symptoms of those who are symptomatic and require[d] medical treatment to overcome the illness." (*Id.* at 9, 17.) Moreover, the government argues that defendant does not suffer from "any of the medical conditions the CDC identifies as a high-risk factor for severe COVID-19 complications." (*Id.* at 17.) While the government does not dispute that defendant Pierre suffers from hypertension, it distinguishes his diagnosis of essential (primary) hypertension from pulmonary hypertension, the latter of which the CDC identifies as a high-risk factor for suffering severe illness from COVID-19 if contracted. (*Id.* at 18.) The government contends that the CDC only finds that non-pulmonary hypertension may, but does not conclusively, increase risk of severe illness from COVID-19. (*Id.*)

The government also disputes the severity of defendant's asthma condition, focusing on the fact that defendant's medical records do not reflect that he has been diagnosed with "moderate to severe asthma." (*Id.*) According to the government, asthma was mentioned for the first time in defendant's medical records on July 6, 2020, when he reported to jail medical staff for the first time his history of asthma after complaining of shortness of breath. (*Id.*) Defendant was subsequently diagnosed by jail medical staff as suffering from "mild, intermittent asthma." (*Id.*; Doc. No. 91-1 at 33.) Defendant was prescribed an albuterol inhaler at that time, which he used three times in July 2020. (Doc. Nos. 95 at 19; 91-1 at 13.) The government argues that defendant

9

Pierre only suffers "mild, infrequent asthma symptoms" because he experienced asthma related symptoms only when exercising and his medical records contain multiple notations that defendant's "lungs sound clear and that he is not experiencing shortness of breath." (Doc. Nos. 95 at 19; 91-1 at 28, 32, 40.) The government emphasizes that the medical records reflect only a diagnosis of "mild, intermittent asthma," and that the CDC recognizes only moderate to severe asthma as a risk factor for becoming severely ill if one contracts the COVID-19 virus. (Doc. Nos. 95 at 18–19; 91-1 at 33.) Thus, the government argues that because defendant's "hypertension and other medical issues appear to be adequately controlled by medication and self-care, and because he has not shown that any of his conditions qualify as a CDC-recognized high risk factor, he does not qualify for compassionate release." (Doc. No. 95 at 19.)

As an initial matter, the undersigned does not discount the possibility of reinfection from the COVID-19 virus. As one district court has observed: "Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, [courts have] err[ed] on the side of caution to avoid potentially lethal consequences." *States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged."); *but see United States v. Molley*, No. 15-cr-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020) (concluding that the uncertainty surrounding the danger of re-infection with COVID-19 "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling" reasons for release exist). Erring on the side of caution, the court finds that defendant's fear of reinfection, and the potential consequences to him were that to occur, to be potentially well-placed. Nevertheless, as explained below, the court does not find that compelling or extraordinary reasons warrant a reduction in defendant's sentence at this time.

It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical conditions, including "moderate-to-severe asthma" and other chronic lung diseases, are "at increased risk of severe illness from the virus that causes COVID-19," and adults with

10

hypertension "might be at an increased risk for severe illness from the virus that causes COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 2, 2020); (Doc. Nos. 91 at 2; 95 at 18).  Here, the court finds that the absence of a formal diagnosis of moderate to severe asthma does not necessarily mean that defendant Pierre is not at an increased risk of suffering severe illness if he were to contract COVID-19 again due to his asthma condition, the symptoms of which have been documented over the last several months and for which he has been prescribed an albuterol inhaler by jail medical staff.  (Doc. No. 91-1 at 13, 32–33.)  Those medical records, however, do not reflect a diagnosis of a chronic lung disease other than defendant's asthma.  (*See* Doc. No. 91-1.)  The court also finds that the medical records submitted in support of the pending motion do establish that defendant suffers from essential (primary) hypertension.  (*Id.* at 19, 22–23, 31–33, 36, 50.)

However, the court need not conclusively determine whether these health conditions of defendant's place him at an increased risk of suffering severe illness from COVID-19, because even if they do, defendant Pierre has not shown, or even argued for that matter, that Fresno County Jail is presently unable to monitor and adequately treat his medical conditions.  *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . . . There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."). Defendant's medical records reflect that he has received regular medical treatment and attention from Fresno County Jail clinical physicians for his hypertension, asthma, and other medical conditions.  (*See* Doc. No. 91-1.)  Moreover, after testing positive for COVID-19 in August 2020,

defendant received regular monitoring for symptoms until September 3, 2020, when he apparently was deemed to have recovered from the asymptomatic infection. (*See* Doc. No. 91-1 at 40–42, 44–49, 51.) Although the court finds it troubling that defendant was apparently not informed that he had tested positive for COVID-19, the medical records submitted by defendant in support of his motion suggest that Fresno County Jail is providing him adequate medical care because he is being prescribed and provided the medications necessary to engage in self-care for his health conditions. (*See* Doc. No. 91-1.)

As one court has acknowledged, "the presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing may constitute an inability to provide self-care under some circumstances. *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020)) (citation omitted). However, here, defendant Pierre has not persuasively argued that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 or that his ability to provide self-care at Fresno County Jail is currently substantially diminished. Rather, in his pending motion, defendant merely asserts in conclusory fashion that because his "conditions of confinement render physical distancing impossible," he is placed at "high risk [of] serious illness or even death." (Doc. No. 91 at 3.) Defendant Pierre has not made any specific allegations regarding, for instance, his lack of access to protective gear or cleaning and sanitizing supplies, or as to his lack of ability to social distance at the Fresno County Jail. Rather, he simply states in his motion that "Fresno County Jail has become an ideal environment for the virus" as demonstrated by his own contraction of COVID-19, and makes general assertions about the conditions of "housing units at any given Federal Facility." (Doc. No. 91 at 2–3.) But defendant Pierre has not presented any evidence regarding the conditions that he is currently facing at Fresno County Jail, or the ways in which those conditions render him unable to provide self-care.

/////

/////

The court certainly recognizes that Fresno County Jail initially failed to control the outbreak of COVID-19 at that facility. According to a news report, the Fresno County's Sheriff's Department "announced on [July 21, 2020] that 471 inmates have tested positive for the coronavirus" at the Fresno County Jail. *See New details released on COVID-19 outbreak at Fresno County Jail*, https://abc30.com/fresno-county-coronavirus-jail-covid-outbreak-cases-covid-19/6328997/ (last reviewed November 10, 2020). The undersigned is receiving regular situation reports from the U.S. Marshal regarding the COVID-19 situation at the Fresno County Jail, where over 200 of this court's detainees are in custody along with over 2,000 county inmates. At one point in July the number of federal prisoners alone at that jail to have tested positive for the virus was nearing 100. However, according to the report received by the undersigned on November 16, 2020, the number of active COVID-19 cases among federal prisoners there is now down to one, with 37 federal prisoners currently in protective quarantine and 17 county inmates having active cases of COVID-19. Moreover, defendant Pierre has not appeared on the list of active cases at the jail for almost two and a half months now, having apparently and fortunately recovered from his infection. The situation with the virus at the Fresno County Jail obviously remains an extremely serious one and may well change given the present increasing rates of infection in the community. However, based on the evidence currently before this court, there is no basis upon which to find that the jail staff is unable to monitor and care for defendant Pierre.[6]

---

[6] Defendant Pierre's medical records appear to reflect that he was asymptomatic after testing positive for COVID-19 on approximately August 10, 2020. Based on those medical records, it appears that defendant Pierre, thankfully, did not become severely ill and may have recovered from the virus by September 3, 2020. *See* Doc. No. 91-1 at 51 (noting the completion of the Fresno County Jail's medical staff's COVID-19 monitoring of defendant Pierre); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . . . Counsel informed the Court that Defendant had a mild case of the virus and has recovered. There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."). The news story cited above notes that after testing positive, "[f]ollowing the CDC guidelines, the inmates [in Fresno County Jail] are isolated until they are deemed COVID-19-free." The undersigned does not necessarily accept the numbers of reported cases at any

Accordingly, the court concludes that defendant Pierre has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A).  Therefore, his motion for compassionate release will be denied at this time.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Pierre's motion was supported by a showing of extraordinary and compelling reasons supporting his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[7]  *See Parker*, 2020 WL 2572525, at *11.

As noted above, defendant Pierre is currently serving a 112-month sentence of imprisonment for identity theft and conspiracy to distribute and possess with intent to distribute controlled substances.  (Doc. Nos. 80, 82.)  At the time of his sentencing on July 21, 2020, he was found to be responsible for 1,122.775 grams of hydrocodone and 4,695 grams of oxycodone.  (Doc. No. 81 at 9.)  With his early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 33 and that his significant criminal history placed him in criminal history category IV, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 188 and 235 months.  (*Id*. at 27.)  The probation officer recommended a low-end of the guideline range sentence of 188 months in BOP custody.

---

institution at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. Nonetheless, there is also no evidence before the court contradicting those reported numbers and at this juncture, defendant Pierre has not persuaded the court that the Fresno County Jail is unable to adequately monitor his condition and care for him.

[7]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

14

(*Id*.) After considering all of the applicable § 3553(a) factors and the circumstances of this case, the undersigned varied downward significantly from the advisory guideline range and sentenced defendant to a 112-month term of imprisonment. (Doc. No. 82 at 2.)

In his pending motion, defendant contends that "additional months in prison will threaten [his] health with no concomitant benefit to federal sentencing goals." (Doc. No. 91 at 4.) Defendant makes no other specific argument as to the court's consideration of the § 3553(a) sentencing factors nor does he argue that a reduction in his sentence at this time would be consistent with those factors.

The government counters that a reduction of defendant's sentence would not be consistent with consideration of the § 3553(a) sentencing factors, which the court considered just four months ago when it imposed defendant's sentence. (Doc. No. 95 at 21–22.) The government asserts that defendant continues to pose a danger to the community because "[n]othing about the COVID-19 pandemic reduces the danger of drugs." (*Id.* at 21.) The government underscores the seriousness of defendant's offense, noting that defendant "was responsible for pushing more than 156,000 30-mg oxycodone pills and 112,277.5 10-mg hydrocodone pills in a 3.5 year window." (*Id.*) The government also argues that defendant's prior criminal history demonstrates an ongoing willingness to engage in crime. (*Id.*) (citing *United States v. Mack*, No. 5:16-cr-00112-DAP-5, 2020 WL 4012837 (N.D. Ohio July 16, 2020)).

As noted, defendant Pierre's criminal history prior to this offense includes prior convictions related to weapons, vandalism, providing false information to a peace officer, driving under the influence, violence, theft, and drug-related offenses over the past three decades. (Doc. No. 81 at 27–28.) In light of this background, consideration of the risk of recidivism weighs against the granting of compassionate release. *See, e.g.*, *United States v. Drummondo-Farias*, No. 1:12-cr-001740-JMS, 2020 WL 2616119, at *6 (D. Haw. May 19, 2020) (denying compassionate release to a defendant in part because had been twice convicted of drug offenses).

/////

/////

/////

15

In addition, the court is not persuaded that defendant has established his post-offense rehabilitation since his sentencing just four months ago. Although defendant's medical records show that defendant Pierre has consistently participated in the 500-Hour Bureau of Prisons Substance Abuse Treatment Program, it does not appear that he has yet had sufficient time to complete that program. (Doc. Nos. 82 at 2; 91-1 at 10–11, 18, 20–21, 23, 43, 52–54, 56–57); *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases)). Defendant Pierre has offered a proposed release plan that includes his participation in Central Valley Teen Challenge, a one–year residential substance abuse recovery and prevention program in Fresno. (Doc. No. 91 at 1.) Some courts have granted compassionate release and included in the conditions of supervised release required participation in such substance abuse treatment programs. *See United States v. Derricoatte*, No. 1:11-cr-91-10, 2020 WL 5629095, at *6 (N.D. Ohio Sept. 21, 2020) (directing defendant to participate in a substance abuse treatment program chosen by his probation officer); *United States v. Andrew Santilli*, No. 18-cr-357-1, 2020 WL 6446665, at *3 (N.D. Ill. Nov. 3, 2020) (noting that the conditions of supervised release require defendant to participate in a substance abuse treatment program). While acknowledging defendant's proposal to participate in a rehabilitation program if released, the court also recognizes that even actual rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Here, as of the date of this order, defendant Pierre has served only about 18 months of his 112-month sentence, or approximately 16 percent. (*See* Doc. No. 95 at 8.) "'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3

(N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). In the court's view, a reduction of defendant's 112-month sentence effectively to one of less than two years would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.[8] *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with the § 3553(a) sentencing factors.

/////

/////

/////

/////

---

[8] Defendant requests that the court either reduce his sentence to time served or amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement, followed by time in the Teen Challenge substance abuse treatment program. (Doc. No. 91 at 4.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e., 18 months) and modify the conditions of supervised release to require home confinement for 94 months. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Pierre in a custodial setting. If the BOP determines that the defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard (*see* fn. 2, above), the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced.

**CONCLUSION**

Because defendant Pierre has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 91) is denied.

IT IS SO ORDERED.

Dated: __November 17, 2020__       /s/ Dale A. Drozd
                                           UNITED STATES DISTRICT JUDGE